[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE COUNT TWO
On October 4, 1994, the plaintiff, Warren S. Randall, filed a two count revised complaint against the defendants for breach of contract and intentional infliction of emotional distress, all arising out of a long partnership association in the practice of law.
The plaintiff, an attorney and former partner of the defendants for over thirty years, alleges the following in count one. The defendants, partners in the law firm of Halloran Sage located in Hartford, Connecticut, engaged in pattern of conduct designed to sever the plaintiff's association from the firm. Due to threats of dissolution by various partners, on September 21, 1987, a revised partnership agreement (the "agreement") was executed by all partners of the firm, including the plaintiff. At the plaintiff's insistence, the new agreement included a phase down and retirement contract and plan between the plaintiff and the defendants, then associated under the name of Halloran, Sage, CT Page 1490 Phelon Hagarty. The agreement included a clause assuring that the plaintiff's "income shall not be adjusted because of hours worked for any reason during the phase down." The agreement further provided that the plaintiff was assured by his partners that his role with clients, partners and associates would not change.
Despite these assurances, after January 1, 1988, the plaintiff was no longer invited to attend the general partners' meetings and was excluded from any planning with respect to the relocation of the partnership offices. The plaintiff's support staff, which he developed during his thirty plus years with the firm, was gradually and purposefully removed from under him. On February 14, 1991, in the plaintiff's absence, a partnership meeting was held at which time the plaintiff's participation points were reduced from 9.6 to 2.0, thereby breaching the agreement with the plaintiff. On May 22, 1991, a partnership meeting was held at which time the defendants expelled the plaintiff from the partnership. Since that time the defendants have failed to honor the agreement with the plaintiff and have withheld income from the plaintiff to which he is entitled under the agreement.
In the second count the plaintiff alleges the following. From January 1, 1988, through May 22, 1991, the defendants intentionally pursued a course of conduct to inflict severe emotional distress upon the plaintiff to compel his resignation from the firm. This course of conduct allowed the defendants to avoid their contractual obligations to the plaintiff under the agreement. The defendants sought to isolate the plaintiff from any involvement in the firm's operations; removed his support staff; set arbitrary goals for the plaintiff; compelled the plaintiff to become jointly and severally liable for a $4,000,000.00 note; intercepted phone calls and messages from the plaintiff's clients; sorted through the plaintiff's personal files; and hired a psychologist to conduct interviews with the plaintiff.
Plaintiff claims that the defendants knew that the plaintiff would be particularly vulnerable to emotional distress since he had suffered a massive heart attack in 1985 for which he was still taking medication, and because of the above mentioned conduct by the defendants, the plaintiff has suffered severe emotional distress. CT Page 1491
On October 17, 1994, the defendants filed a motion to strike count two of the plaintiff's complaint on the ground that the defendants' alleged conduct was not extreme and outrageous, and the alleged distress suffered by the plaintiff was not severe.
The defendants argue that the allegations in the plaintiff's complaint fall below the requisite level of extreme and outrageous conduct and that the complaint makes only a conclusory statement that the distress was severe, with no facts supporting this allegation.
The elements of the tort, intentional infliction of emotional distress are set forth in DeLaurentis v. New Haven,220 Conn. 225, 266-67, 807 (1991).
 "`In order for the plaintiff to prevail in a case for liability under . . . [t]he intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'. . . Liability for intentional infliction of emotional distress requires `conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'. . . Thus, `[i]t is the intent to cause injury that is the gravamen of the tort'; . . ."
See also Connecticut Nat'l Bank v. Montanari, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 517808 (January 26, 1994, Aurigemma, J.) ("Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, CT Page 1492 and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")
Whether the conduct complained of is sufficiently is extreme or outrageous is for the determination of the court in the first instance, Parsons v. Sikorsky Aircraft, Inc., Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 280394 (April 5, 1994, Ford, J.); Rosario v.Firine, 8 CSCR 874 (July 22, 1993, Gordon, J.),
The plaintiff alleges that he suffered a massive heart attack in 1985 and that the defendants knew that he was particularly susceptible to emotional distress. However, according to the complaint, the first instance of conduct on the part of the defendants which could even remotely be described as "extreme and outrageous", occurred as late as January 1, 1988, when the plaintiff was removed from the firm's administrative committee; three years after the plaintiff's heart attack. It was not until January 8, 1991, six years after his heart attack, that the plaintiff alleges that he discovered the defendants' personnel rifling through his personal files, and not until May 22, 1991, when the defendants expelled the plaintiff from the partnership.
Painful controversy between partner's in law firms is a common, if unfortunate aspect of the practice of law, particularly in modern society. The length of time between the plaintiff's heart attack and the alleged conduct on the part of the defendants as aggravating as it might have been, is too remote to impute an intentional scheme on the part of the defendant's designed to take advantage of the plaintiff's physical susceptibilities. We conclude therefore, that the plaintiff has failed to allege in count two facts which, if proven, would rise to the level of extreme and outrageous conduct necessary to maintain a claim for intentional infliction of emotional distress.
Defendants' motion to strike count two is granted.
Wagner, J. CT Page 1493